UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-653-RJC-DCK

| | |
|---|---|
| **MEINEKE CAR CARE CENTERS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| **RUDOLPH H. MOORE and** ) | |
| **GB5 MOTORS, INC.** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** comes before the Court upon Plaintiff's Motion for Default "Order"[1] and Preliminary Injunction. (Doc. No. 11).

## I.   BACKGROUND

Plaintiff filed its Verified Complaint and Motion for Preliminary Injunction, (Doc. No. 1), on October 3, 2012. Plaintiff served Defendants on October 8, 2012. (Doc. Nos. 7; 8). Defendants failed to provide a timely answer or otherwise plead pursuant to Federal Rule of Civil Procedure 12(a)(1)(A)(i). Plaintiff filed a Motion for Entry of Default on February 18, 2013, (Doc. No. 9), and Default was entered on February 19, 2013, (Doc. No. 10). Plaintiff then took no action in its case for over three months. On May 29, 2013, this Court ordered Plaintiff to file a Motion for Default Judgment or the Court would dismiss the case without prejudice. On

---

[1] Because Default has already been entered, the Court will assume that Meineke intended to file a Motion for Default Judgment, as the Court instructed it to do on May 29, 2013. The Court will therefore construe the Motion for Default "Order" as a Motion for Default Judgment. The Court also notes that, as in past filings made by Meineke, the present motion falsely indicates that a proposed order and preliminary injunction are enclosed. See (Doc. No. 11 at 3). See LCvR 7.1(G).

1

June 17, 2013, Plaintiff filed a Motion for Default "Order" and Preliminary Injunction, (Doc. No. 11).

**II.  DISCUSSION**[2]

On or about November 13, 2009, Plaintiff Meineke Car Care Centers, Inc. ("Plaintiff" or "Meineke") entered into a Meineke Franchise and Trademark Agreement ("Franchise Agreement") with Defendant GB5 Motors, Inc. ("GB5 Motors") which granted it the right to operate a Meineke Center located at 4405 Duke Street, Alexandria, Virginia ("Center No. 462"). (Doc. Nos. 1 at ¶ 21; 1-1: Franchise Agreement).  On the same day, Defendant Rudolph H. Moore ("Moore") executed an Owners' Personal Guaranty whereby he personally guaranteed to Meineke that he would be liable for any breach of the Franchise Agreement. (Doc. Nos. 1 at ¶ 22; 1-1 at Schedule D).

Pursuant to the Franchise Agreement, Defendants became authorized to: (i) operate an automotive repair center under the trade name "Meineke" under the Meineke system; (ii) display the Meineke name, logo and marks; (iii) receive training and access to Meineke's methods, procedures and techniques; and (iv) participate in an established network of licensed automotive repair centers.  (Doc. No. 1 at ¶ 23).

Pursuant to the Franchise Agreement, Defendants agreed to: (i) pay Meineke on a weekly basis a franchise fee, or royalty, in an amount equal to seven percent (7%), five percent (5%), four percent (4%), or three percent (3%) of the center's gross revenues depending on the type of

---

[2] Because of Defendants' default in this matter, they are deemed to have admitted those facts alleged in the Complaint that are material to Plaintiff's claims against them. See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.").

product sold or service performed, (Doc. No. 1-1 at Article 3.2); (ii) pay Meineke on a weekly basis an advertising contribution in an amount equal to eight percent (8%) of the center's gross revenues for all services except 1.5% of the center's gross revenues for the sale of tires, (id. at Article 3.4); and (iii) furnish Meineke with accurate weekly business reports of the center's gross revenues. (Doc. Nos. 1 at ¶ 24; 1-1 at Article 9.3).

During the term of the Franchise Agreement, Defendants breached their obligations and promises under Articles 3 and 9 of the Franchise Agreement by failing to submit to Meineke accurate weekly business reports of the center's gross revenues, and by failing to pay Meineke all of the franchise fees and advertising contributions incurred by them. (Doc. No. 1 at ¶ 26).

On July 16, 2012, Meineke sent Defendants a Notice of Default for their failure to submit to Meineke accurate weekly business reports of the center's gross revenues, and for their failure to pay Meineke all of the franchise fees and advertising contributions incurred by them. (Id. at ¶ 27; Doc. No. 1-2: Carlet Aff.). Meineke informed Defendants that if they did not cure their defaults, the license to operate Center 462 would be subject to termination. (Id.).

Defendants failed to cure their default. (Doc. No. 1 at ¶ 28). Therefore, Meineke sent Defendants a Notice of Termination informing them that their license for Center No. 462 was terminated effective September 4, 2012. (Id.; Doc. No. 1-2: Carlet Aff. at ¶ 11).

Defendants also agreed, pursuant to Article 11.4 of the Franchise Agreement, that upon termination of the Franchise Agreement and for a period of one (1) year from the date of compliance they would not, "directly or indirectly (such as through corporations or other entities owned or controlled by [Defendants]) own a legal or beneficial interest in, manage, operate or consult with": (a) any business operating at the premises of Center No. 462 or within a radius of

six (6) miles of the premises of Center No. 462 which business repairs or replaces exhaust system components, brake system components, or shocks and struts and (b) any business operating within a radius of six (6) miles of any Meineke Center existing as of the date Defendants' Franchise Agreement terminated which business repairs or replaces exhaust system components, brake system components, or shocks and struts. (Doc. No. 1 at ¶ 30).

Notwithstanding Defendants' termination as Meineke franchisees for Center No. 462, Defendants continue to operate a competing business from the premises of former Center No. 462, they continue to utilize the telephone number (703) 823-1811 that has been advertised extensively in conjunction with the Meineke name, and they continue to display Meineke's protected Marks on or about the premises of former Center No. 462. (Doc. Nos. 1 at ¶ 32; 1-3: Skal Decl.; 1-4: Truesdale Aff.). At Center No. 462, Defendants continue to offer the same services they offered when they were an authorized Meineke franchisee. (Doc. Nos. 1 at ¶ 33; 1-3: Skal Decl. at ¶ 4). By continuing to operate a business using the Meineke Marks, Defendants are unfairly competing with Meineke and causing customer confusion as to the origin of the services being offered at this location. (Doc. No. 1 at ¶ 33).

Pursuant to Article 17.3 of the Franchise Agreement, either party may obtain preliminary relief in the form of a preliminary injunction, as long as that party contemporaneously files a demand for arbitration of such claim and the final merits of such claim are determined in the arbitration proceedings. (Doc. No. 1 at ¶ 25). Accordingly, contemporaneously with the filing of its Verified Complaint and Motion for a Preliminary Injunction, Meineke filed a demand for arbitration with the American Arbitration Association. (Id.).

## III. CONCLUSION

After reviewing the pleadings and memoranda of law in this action and the relevant authorities, the Court finds that Plaintiff is entitled to entry of a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. Accordingly, Plaintiff's Motion for Preliminary Injunction, (Doc. No. 11), is **GRANTED**.

Meineke states that it "will seek a final judgment and order on the merits of the case through the arbitration action that is currently stayed pending the outcome of this action." (Doc. No. 11 at 2-3). Because the Franchise Agreement requires the final merits of Plaintiff's claims to be determined in arbitration proceedings, the Court finds Plaintiff's Motion for Default Judgment premature. Therefore, Plaintiff's Motion for Default Judgment, (Doc. No. 11), is **DENIED without prejudice** to Plaintiff's ability to refile it after the arbitration panel determines the final merits of Plaintiff's claims.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants cease and refrain from, for a period of one (1) year from the date of entry of this Order, directly or indirectly (such as through corporations or other entities owned or controlled by them) owning a legal or beneficial interest in, managing, operating or consulting with: (a) any business operating at the premises of former Center No. 462 located at 4405 Duke Street, Alexandria, Virginia or within a radius of six (6) miles of the premises of Center No. 462 which business repairs or replaces exhaust system components, brake system components, or shocks and struts; and (b) any business operating within a radius of six (6) miles of any Meineke Center existing as of the date Defendants' Franchise Agreement

terminated which business repairs or replaces exhaust system components, brake system components, or shocks and struts.

2. Defendants cease using and/or remove and/or have removed any names, marks, signs, forms, advertising, manuals, computer software, supplies, products, merchandise and all other things and materials of any kind which are identified or associated with the Meineke name, logo, marks or trade dress, or which contain a name, logo or mark confusingly similar to the Meineke name, logo, marks or trade dress, including, but not limited to the black and yellow signage that lists Meineke's services.

3. Defendants do everything required by the telephone company, including but not limited to, the payment of all outstanding telephone bills and the signing of all relevant telephone authorization transfer documents, to release or transfer to Meineke the telephone number (703) 823-1811 now being used by Defendants' business located at 4405 Duke Street, Alexandria, Virginia that has been advertised in conjunction with Meineke's Marks.

4. Article III of the Constitution requires that there be a live case or controversy for a federal court to hear a case. Burke v. Barnes, 479 U.S. 361 (1987). The parties' Franchise Agreement requires the final merits of Plaintiff's claims to be determined in arbitration proceedings. Having resolved all issues pending in front of this Court, the Court requests Meineke to file a stipulation of voluntary dismissal under Rule 41(a) within **thirty (30) days** of the entry of this Order.

Signed: August 19, 2013

Robert J. Conrad, Jr.
United States District Judge